# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| YVETTE BEAULIEU, <br> *Plaintiff*, <br> v. <br> WILLIAM BARR *et al.*, <br> *Defendants*, | Civil Action No. 15-896 (TJK) |

## MEMORANDUM OPINION AND ORDER

Yvette Beaulieu, a former employee of the Federal Bureau of Investigation proceeding *pro se*, has sued 60 government officials for alleged constitutional violations, various forms of discrimination, and retaliation in violation of Title VII and the First Amendment. Her complaint incorporates over 1,500 pages of exhibits, including emails, annotated news articles, and employment records. *See* ECF Nos. 2 through 2-14. Defendants have moved to dismiss all claims. ECF No. 30. For the reasons explained below, the Court will grant Defendants' motion in part and deny it in part. Beaulieu's Title VII retaliation claim will proceed, her remaining claims will be dismissed, and all Defendants will be dismissed except for Attorney General William Barr.[1]

## I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not

---

[1] Defendant William Barr, who assumed office as Attorney General in February 2019, is automatically substituted for Eric Holder under Federal Rule of Civil Procedure 25(d).

require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). The plaintiff is entitled to the benefit of all reasonable inferences from the facts alleged, *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . do not suffice." *Iqbal*, 556 U.S. at 678.[2]

While a *pro se* complaint "must be construed liberally, the complaint must still present a claim on which the Court can grant relief." *Budik v. Dartmouth–Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013). "A court considering a *pro se* plaintiff's complaint should look to all filings, including filings responsive to a motion to dismiss, to discern whether the plaintiff has nudged [her] claim[s] across the line from conceivable to plausible." *Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 268 (D.D.C. 2018) (internal quotation marks omitted). Still, "the Court need not assume the role of the *pro se* plaintiff's advocate," *id.*, and "it is not the Court's job to canvass the record for documents supporting a *pro se* party's position." *Sun v. D.C. Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015).

## II. Analysis

Liberally construed, Beaulieu's complaint contains ten identifiable "grievances" or claims: (1) a violation of her due process rights; (2) Title VII discrimination; (3) Equal Pay Act discrimination; (4) age discrimination; (5) genetic information discrimination; (6) Title VII retaliation; (7) First Amendment retaliation; (8) a violation of the No Fear Act; (9) a violation of

---

[2] Defendants also seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. While the Court lacks jurisdiction over claims that are "patently insubstantial" or "essentially fictious," Beaulieu's claims do not meet that standard, which applies to "bizarre conspiracy theories" or claims of "supernatural intervention." *See Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994) (citing *Neitzke v. Williams,* 490 U.S. 319, 327 n. 6 (1989); *Hagans v. Lavine*, 415 U.S. 528, 536–38 (1973)). The Court therefore has jurisdiction over Beaulieu's federal claims.

her Sixth Amendment right to counsel; and (10) other miscellaneous claims, including what she calls "Uncontrollable Systemic Factors" and a "perceived conflict" of the "laws pertinent to Executive Privilege, State Secrets, and Brady v. Maryland" with the Ninth Amendment. ECF No. 1 ("Compl.") at 18–19. As explained below, the only claim she has plausibly alleged is Title VII retaliation.

### A. Due Process

Beaulieu alleges that "there [was] no due process" concerning the "discrimination, retribution, harassment, and the resulting termination" that she allegedly experienced. *Id.* at 4. She then alleges that "it is unknown whether I was or am under investigation for criminal or national security related matters (and easily deniable after the fact)." *Id.* at 4–5. Beaulieu does not explain whether her claim is a procedural or substantive due process claim. To bring a procedural due process claim, she must allege (1) "deprivation of a protected liberty or property interest," (2) "by the government," (3) "without the process that is 'due' under the Fifth Amendment." *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015). Alternatively, to make out a substantive due process claim, she must allege that "egregious government misconduct" deprived her of a constitutionally recognizable liberty or property interest. *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206, 209 (D.C. Cir. 2003).

Beaulieu's due process claim fails under either theory. Even assuming she had a property interest in her job from which she was terminated, *Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008), the complaint does not explain any alleged deficiencies with the extensive process she was apparently afforded, *see, e.g.*, ECF No. 2-6, at 66, 76 ("numerous 90-day [Performance Improvement Plan] periods"); *id.* at 71 ("weekly 'counseling' sessions"); ECF No. 2-9 at 92–94 ("letter . . . to advise [Beaulieu] of the proposal to remove [her] from [her] current position," giving "right to reply to this proposal" and "right to select an attorney or

3

representative to assist"). Because she does not sufficiently allege that she was "deprived of a meaningful opportunity to be heard, [she] cannot make out a viable procedural due process claim." *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 124 (D.D.C. 2012); *see McManus v. District of Columbia*, 530 F. Supp. 2d 46, 73 (D.D.C. 2007) (dismissing plaintiffs' due process challenge to their terminations because they did not "identify the specific process that the District allegedly failed to afford each of them"). Moreover, she does not plead any facts suggesting that the government committed "egregious" misconduct. And although the complaint also refers to "alternative competing hypothes[e]s," Compl. at 4, behind the various events alleged, that speculation does nothing to nudge her due process claim "from conceivable to plausible." *Twombly*, 550 U.S. at 570. Her due process claim must therefore be dismissed.

### B. Discrimination

Beaulieu alleges that she suffered discrimination prohibited under four statutes: the Age Discrimination in Employment Act (ADEA), the Genetic Information Nondiscrimination Act (GINA), Title VII, and the Equal Pay Act. Under the first three, "the two elements of a discrimination claim are that: (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or [genetic information]." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *see* 29 U.S.C. § 621 *et seq.* (ADEA); 42 U.S.C. § 2000ff–1(a) (GINA); 42 U.S.C. § 2000e–16(a) (Title VII). The Equal Pay Act also prohibits sex discrimination by requiring certain employers to pay equal wages for equal work, with certain exceptions and limitations. 29 U.S.C. § 206(d).

### 1. ADEA and GINA

Beaulieu does not allege that Defendants acted against her because of her age or genetic information, which is fatal to her ADEA or GINA claims. As for the former, she merely alleges, without further explanation or detail, that recent college graduates with less work experience

received her same salary. *See* Compl. at 7. And as to the latter, she does not allege what genetic information purportedly subjected her to discrimination. *See id.* at 4 (alleging that discrimination may have "potentially" occurred based on her "DNA"). In fact, she appears to base her GINA claim on her "ethnicity," "national origin," or "race," which is a claim properly brought under Title VII, as opposed to the GINA. *See* ECF No. 2-8 at 31, 118–19; *Robinson v. Dungarvin Nevada, LLC*, No. 2:16-CV-902-JAD-PAL, 2018 WL 547225, at *5 (D. Nev. Jan. 24, 2018) ("Race is protected under Title VII, not under GINA."), *aff'd*, 738 F. App'x 543 (9th Cir. 2018). For these reasons, her claims under the ADEA and the GINA must be dismissed.

### 2. Equal Pay Act

Beaulieu has also failed to plausibly allege a violation of the Equal Pay Act. While that statute "prohibit[s] . . . sex discrimination," 29 U.S.C. § 206(d), the complaint alleges no facts suggesting that the pay inequity described was based on sex. *See* Compl. at 7 (alleging only that "Newer employees" were subject to "Differential pay levels"). As such, her Equal Pay Act claim must also be dismissed.

### 3. Title VII Discrimination

Finally, Beaulieu purports to allege a Title VII discrimination claim. But she does not plausibly assert that any adverse employment action she suffered was the result of Defendants' unlawful discrimination.

#### a. Adverse Employment Actions

"An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks omitted). The action must produce "objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). "Further, '[a]

tangible employment action in most cases inflicts *direct* economic harm.'" *Douglas*, 559 F.3d at 552 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)).

Beaulieu's complaint and the voluminous record she attaches are difficult to follow, but she appears to allege that Defendants: (1) applied inconsistent and arbitrary performance standards and employment policies to her, *see* Compl. at 8–11; (2) possibly sought to damage her reputation by releasing "false or misleading information," *id.* at 13–15; (3) used "potentially derogatory credit report information," *id.* at 14, against her in some way; (4) failed to pay her "GEHA medical claims during employment," *id.* at 14; (5) terminated her, *id.* at 4; (6) failed to promote her, *id.* at 7; and (7) demoted her and decreased her pay, *id.* at 5.

As for the first three grievances—applying inconsistent and arbitrary performance standards and employment policies to her, releasing false information to damage her reputation, and using derogatory credit report information against her—Beaulieu has not pleaded facts that suggest that these actions constituted a significant change in her employment status that directly caused her any objectively tangible harm. And while an adverse employment action may "extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001); *see also Forkkio*, 306 F.3d at 1130 ("Purely subjective injuries, such as . . . public humiliation or loss of reputation" not actionable under Title VII). Accordingly, these grievances are not cognizable as adverse employment actions under Title VII.

### b. Discriminatory Intent

To assert a claim for Title VII discrimination, Beaulieu must also plead facts that connect an adverse employment action to a discriminatory intent on the part of Defendants. In other words, she must plead facts that plausibly suggest that she "was treated . . . differently than similarly situated employees who were not of [her] national origin, gender, or religion."

6

*Massaquoi v. D.C.*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015); *see also Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013). She does not plausibly allege that she was treated differently along these lines.

First, regarding the above three grievances that otherwise fail to constitute adverse employment actions, she does not allege—in any way—that Defendants acted "because of" her national origin or gender. *Baloch*, 550 F.3d at 1196. Her allegations that Defendants failed to pay her medical claims and wrongfully terminated her are similarly deficient. *See* Compl. at 12; ECF No. 2-1, at 12–13, 63.

Second, regarding Beaulieu's allegation that Defendants failed to promote her, she alleges only that "[o]ther employees [were] promoted at a faster rate" than her, Compl. at 7. That allegation alone is insufficient to plead that Defendants' failure to promote her was motivated by unlawful discrimination of some kind. For example, the complaint makes no mention of the national origins, genders, or positions of any such employees who were in fact promoted.

Third, Beaulieu's allegations that Defendants demoted her and reduced her pay present the closest calls. But ultimately, those allegations are also insufficient. She alleges that she is "the only Mexican (Hispanic) female over forty assigned to the unit, section, and possibly the FBI." ECF No. 2-6 at 82. She further alleges that, despite providing evidence to supervisors of her "outstanding" work product, she continued to receive unfairly critical performance reviews. *See* Compl. at 5–6. This, she contends, led to her "demotion and pay reduction." *Id.* at 5; *see* ECF 2-7 at 116 (notification of personnel action). The complaint also refers to unspecified "diversity and sexist . . . comments" that her peers and supervisors made about her that are "touched on in [her] written statement." Compl. at 7. However, in that statement, she merely

characterized her supervisors' comments as describing her work product as "unacceptable" and "Rat Poison." ECF No. 2-6 at 70, 77. Her statement does not reference any comments by her peers or supervisors that suggest a discriminatory intent or refer to her national origin or gender. *See id.* at 71 ("The reasons I filed the initial [Equal Employment Opportunity] (EEO) complaint directly relate to their verbal comments questioning *my performance*." (emphasis added)).

The Court is therefore left with no allegations—save for the bare assertion that Beaulieu was the only Hispanic female assigned to her unit—that allow the Court to infer that Defendants were motivated by discrimination based on Beaulieu's national origin or gender when demoting her and reducing her pay. She does not, for example, identify any "comparator" employees who were treated differently. *See Townsend v. United States*, 236 F. Supp. 3d 280, 307 (D.D.C. 2017). Nor does she "identif[y] specific statements purportedly made" by a supervisor "reflecting an animus against individuals of" her protected class. *Attakora v. D.C.*, 943 F. Supp. 2d 152, 157 (D.D.C. 2013). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Beaulieu's Title VII discrimination claim suffers this defect, and so it must be dismissed.[3]

**C.    Retaliation**

Beaulieu brings retaliation claims under both Title VII and the First Amendment. *See* Compl. at 5–6, 16–17. Under either theory, she must allege that "(1) that [s]he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a

---

[3] By proceeding on a disparate treatment theory of Title VII, Beaulieu appears to abandon her hostile work environment claim that she pursued during the EEO process. *See* ECF No. 2-2 at 76. Nonetheless, even if the Court construed the complaint as pleading a hostile work environment claim, the claim would fail the "severe or pervasive" standard for "abusive working environments." *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

8

person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of [protected activity] and the adverse action taken against h[er].'" *Doe v. District of Columbia,* 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder,* 774 F. Supp. 2d 147, 169 (D.D.C. 2011)); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006).

Beaulieu's complaint and accompanying exhibits are far from a model of clarity about when, how, and why Defendants retaliated against her. However, at least one plausible retaliation claim under Title VII is discernable.[4] Beaulieu alleges that Defendants' actions against her were motivated by her EEO complaint. Compl. at 17 ("I believe retaliation and retribution occurred . . . because I [was] in contact with the [Equal Employment Opportunity Commission]."). And those actions include her termination. *See* Compl. at 4. This satisfies the first two elements of a retaliation claim because the "filing of an administrative complaint" to an EEO office is a "protected activit[y]," *Forman v. Small*, 271 F.3d 285, 300 (D.C. Cir. 2001), and "firing" is an adverse employment action, *Douglas*, 559 F.3d at 557.

Only the third requirement, the causal link, remains. Causation "may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity." *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 104 (D.D.C. 2012). No

---

[4] The remainder of her retaliation allegations appear deficient for a variety of reasons. The complaint characterizes most of Beaulieu's poor performance reviews and other negative experiences at the FBI as part of a "consistent pattern of . . . retribution[] and retaliation." Compl. at 6. But she has not pleaded facts that plausibly allege that those grievances were materially adverse actions by which Defendants retaliated against her for protected activity. She also asserts that Defendants retaliated against her because she sought legal advice, *id.* at 15, but she does not explain how they did so. And insofar as she asserts that Defendants retaliated against her by making it hard for her to retain a lawyer, all she asserts is that it was "extremely complicated to find adequate counsel because of the barriers, such as finding an attorney who has appropriate security clearances, or finding an attorney who does not have potential conflicts of interest." *Id.*

bright-line rule governs temporal proximity between a protected activity and adverse action. "While the Supreme Court has suggested that 'in some instances a three-month period . . . may, standing alone, be too lengthy to raise an inference of causation,' neither the Supreme Court nor the D.C. Circuit 'has established a bright-line three-month rule.'" *BEG Investments, LLC v. Alberti*, 144 F. Supp. 3d 16, 22 (D.D.C. 2015) (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012)). Beaulieu brought her initial EEO complaint of discrimination in March 2010, ECF No. 2-6 at 46, and she filed amendments to her complaint with the FBI's Office of EEO Affairs from August through November 2010, *see* ECF No. 2-8 at 35–52. The FBI terminated her employment on November 15, 2010, just five days after one of her letters to the EEO Office. *See id.* at 39, 56. This temporal proximity alone is sufficient to plead causation. *Bryant v. Pepco*, 730 F. Supp. 2d 25, 31 (D.D.C. 2010). For these reasons, Beaulieu has plausibly alleged retaliation under Title VII.

Her First Amendment retaliation claim, by contrast, lacks a plausible causal link between her protected conduct—disclosing "unfavorable work-related assessments" to supervisors, the FBI Inspector General, and the National Defense Intelligence College—and her termination, or any other purported adverse action against her. Compl. at 16–17. She pleads no facts relevant to the timing, content, or other context of her disclosures for the Court to plausibly infer that they motivated Defendants to retaliate against her in some way. Accordingly, this claim must be dismissed.

### D. No Fear Act

Beaulieu pleads a violation of the Notification and Federal Employee Anti-Discrimination and Retaliation ("No Fear") Act, 5 U.S.C. § 2301 *et seq.* Compl. at 17. But "[o]f the few courts that have considered claims made under the No Fear Act, none have found that the Act provides a private cause of action or creates a substantive right for which the government

must pay damages." *Williams v. Spencer*, 883 F. Supp. 2d 165, 182 (D.D.C. 2012) (quoting *Glaude v. United States,* 248 F. App'x. 175, 177 (Fed. Cir. 2007) (unpublished)). The Court agrees. Beaulieu's No Fear Act "grievance" is not a cognizable standalone claim. It must be dismissed.

### E. Sixth Amendment

Beaulieu alleges that Defendants violated her Sixth Amendment right to counsel by making it hard for her to find a lawyer with a security clearance and without a conflict of interest. *See* Compl. at 15. But "there is in a civil case no constitutional right to counsel." *Koller By & Through Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1052 (D.C. Cir. 1984), *vacated sub nom. on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985). Therefore, her Sixth Amendment claim must be dismissed.[5]

### F. Miscellaneous Allegations

The complaint concludes with a hodge-podge of grievances—"[u]ncontrollable [s]ystemic . . . issues related to the work environment, atmospherics, and performance," and a "perceived conflict" of the "laws pertinent to Executive Privilege, State Secrets, and Brady v. Maryland" with the Ninth Amendment. Compl. at 18–19. Even affording Beaulieu the liberal

---

[5] Although the complaint does not invoke a due process right to counsel, some courts have found that the Due Process Clause provides civil litigants a "qualified right to retain the counsel of his ch[oice]," *M.K. v. Tenet*, 99 F. Supp. 2d 12, 26 (D.D.C. 2000). But that right appears to go "no further than preventing arbitrary dismissal of a chosen attorney." *Kentucky W. Virginia Gas Co. v. Pennsylvania Pub. Util. Comm'n*, 837 F.2d 600, 618 (3d Cir. 1988) (internal quotation marks omitted). And Beaulieu failed to plead such a claim. The complaint does not identify any "chosen attorney" or how Defendants interfered with her right to retain that attorney. The complaint merely alleges, *see* supra note 4, that "it is "extremely complicated to find adequate counsel because of the barriers, such as finding an attorney who has appropriate security clearances, or finding an attorney who does not have potential conflicts of interest." Compl. at 15.

construction due *pro se* litigants, the Court cannot discern a plausible claim grounded solely on Beaulieu's interpretation of "the spirit and intent of the laws of the United States." *Id.* at 19.

## G. Individual Defendants

For the reasons described above, Beaulieu's retaliation claim under Title VII is the only claim remaining. Under Title VII, "the head of the department, [executive] agency, or unit," Attorney General William Barr, "shall be the defendant." 42 U.S.C. § 2000e–16(a), (c); *see* 5 U.S.C. § 105 ("'Executive agency' means an Executive department, a Government corporation, and an independent establishment."); 5 U.S.C. § 101 (Department of Justice an Executive department); *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002) ("[Plaintiff] alleges Title VII retaliation by the FBI; the FBI is a subunit of the Justice Department. Therefore, the proper defendant is the Attorney General, the head of the Justice Department."). All other Defendants are therefore dismissed. *See Lawson v. Sessions*, 271 F. Supp. 3d 119, 125 n.1 (D.D.C. 2017); *Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 67 (D.D.C. 2011).

## III. Conclusion

For all these reasons, Defendants' motion, ECF No. 30, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim for Title VII retaliation will proceed; the remaining claims are dismissed; and all Defendants are dismissed except for Attorney General William Barr.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 29, 2019